UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| GINA STARNES,                                   ) | |
|                                                       ) | |
|        Plaintiff,                                 ) | |
|                                                       ) | |
|        v.                                            ) | CAUSE NO. 1:04-CV-192 |
|                                                       ) | |
| BARRETT & MCNAGNY, LLP,              ) | |
|                                                       ) | |
|        Defendant.                               ) | |

**OPINION AND ORDER**

**I. INTRODUCTION**

Gina Starnes believes that during her employment at Barrett & McNagny, LLP

("Barrett"), she was subjected to sexual harassment and constructively discharged, and thus she

brought this suit against Barrett under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §

2000e *et seq.*[1]  Barrett now moves for summary judgment.  Because the harassment alleged by

Starnes is not nearly severe enough to be actionable under Title VII, Barrett's motion will be

GRANTED.

**II. FACTS**[2]

Starnes worked in various clerical positions for Barrett, a Fort Wayne, Indiana, law firm,

from 1993 to 2003.  During her tenure, she had occasional dealings with Al Behm, a

maintenance worker employed by Barrett's landlord.  Prior to 2002, Starnes considered Behm a

casual friend: they would sometimes lunch together (although always in the company of other

---

[1]Accordingly, subject matter jurisdiction arises under 28 U.S.C. § 1331.   Jurisdiction of the undersigned
Magistrate Judge is based on 28 U.S.C. § 636(c), all parties consenting.

[2]The facts of this case are not in dispute.  Thus, for brevity's sake, they are recited here without citation to
the record.

coworkers), and they once shared a table at a coworker's wedding reception.  However, after

Starnes returned from a maternity leave in early 2002, Behm offended her on several occasions,

both by words and actions.  She complains about the following incidents, in chronological order:

1.      While Starnes and two other coworkers were discussing breast-feeding, Behm

        approached the group and suggested that Starnes should add chocolate syrup to her breast

        milk, since kids like chocolate milk.

2.      Behm, while in earshot of Starnes, remarked to another maintenance worker that Starnes

        had "a nice ass."

3.      Upon running into Starnes and two female coworkers on their way to the basement

        (where Starnes kept her breast pump and related supplies), Behm asked them, "Does it

        take all three of you to pump her breasts?  Can I come and watch?"

4.      After Starnes complained to her superiors about the above three incidents, Behm

        attempted to apologize to Starnes, in a manner which apparently bothered her.  Behm

        came to Starnes's work area and stood behind her, "jiggling his change in his pocket."

        Starnes avers that this behavior "terrified" her.  Nonetheless, she acknowledged his

        presence, and the two went into a back room where Behm apologized for offending her

        previously.  Although Starnes entered the back room willingly, she was "scared" to be

        there alone with Behm.

5.      When Starnes passed by Behm in a hallway while Behm was changing a light bulb,

        Behm asked Starnes to "come here" and "hold my hand."

6.      When Starnes, Behm, and another employee were in an elevator together, Behm

        remarked to the other employee that "[t]hese elevators are just like females being

2

hormonal."

7.      When Starnes and another employee were in the parking lot, speaking to a windshield

repairman, Behm inexplicably "[s]tood there, staring" for a "good three to five minutes."

8.      Behm came into Starnes's work area to settle an account.  (Starnes says that Behm was

there "to pay for his Dell computer," but she does not elaborate.)  Starnes was the only

person in that office at the time and was on the phone with a client.  Behm tried to speak

with Starnes, but she ignored him and continued talking on the phone.  Eventually, Behm

left the office, saying "See how you are?" on his way out.

The first six of these incidents took place between January and May of 2002, and the last

two happened in June and November of 2002, respectively.  Starnes tendered her resignation to

Barrett in December 2002, but stayed on until February 2003 in order to earn extra vacation time

and train her replacement.  On her last day, she sent an email to all Barrett personnel, thanking

the firm for allowing her "to experience multiple responsibilities" and expressing hope that the

"many friendships" she developed in ten years at the firm would continue.

### III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of

material fact.  *Payne*, 337 F.3d at 770.  When ruling on a motion for summary judgment, a court

"may not make credibility determinations, weigh the evidence, or decide which inferences to

draw from the facts; these are jobs for a factfinder."  *Id.*  The only task in ruling on a motion for

summary judgment is "to decide, based on the evidence of record, whether there is any material

dispute of fact that requires a trial."  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir.

1994).  If the evidence is such that a reasonable factfinder could return a verdict in favor of the

3

nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770. A court

must construe the record in the light most favorable to the nonmoving party and avoid "the

temptation to decide which party's version of the facts is more likely true," as "summary

judgment cannot be used to resolve swearing contests between litigants." *Id.* However, "a party

opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate

that there is a genuine issue of material fact for trial." *Id.* at 771.

## IV. DISCUSSION

### *A. Sexual Harassment Claim*

To prevail on her sexual harassment claim, Starnes must prove that (1) she was subjected

to unwelcome sexual harassment; (2) the harassment was based on her sex; (3) the harassment

unreasonably interfered with her work performance by creating a hostile work environment; and

(4) there is a basis for employer liability. *McPherson v. City of Waukegan*, 379 F.3d 430, 437-38

(7th Cir. 2004). To prove the third element, that the harassment created a hostile work

environment, Starnes must show that Behm's conduct was "so severe or pervasive as to alter the

conditions of employment." *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 786

(1998)). Further, to qualify as "hostile," the work environment must have been "both objectively

and subjectively offensive, one that a reasonable person would find hostile or abusive, and one

that the victim did in fact perceive to be so." *Id.* (quoting *Faragher*, 524 U.S. at 787). Starnes,

however, fails to satisfy the "objective" element of this test, as no reasonable jury could

conclude that her work environment was "one that a reasonable person would find hostile or

abusive."

This case bears a striking resemblance to the claim rejected by the Seventh Circuit in

*Baskerville v. Culligan Int'l Co.*, 50 F.3d 428 (7th Cir. 1995).  The facts of that case were as

follows:

> [O]ver a seven-month period, the plaintiff's supervisor had: called her a "pretty
> girl"; grunted "um um um" when the plaintiff wore a leather skirt to the office;
> told the plaintiff that her presence made the office "hot"; suggested that "all pretty
> girls," a category that presumably included the plaintiff, "run around naked"; told
> the plaintiff that he left the company Christmas party early because he "didn't
> want to lose control" at the sight of "so many pretty girls"; and suggested to the
> plaintiff that the solitary vice was his chief consolation in his wife's absence.

*Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003) (summarizing *Baskerville*).  The

court held that, as a matter of law, these incidents were insufficient to create an objectively

hostile working environment.  *Baskerville*, 50 F.3d at 431.  Here, similarly, Starnes was only

subjected to a handful of relatively tame comments spread over a period of several months.

Moreover, the harassment alleged by Starnes is in some ways *less* troubling than that in

*Baskerville*.  Behm was not Starnes's supervisor (in fact, he did not even work for the same

employer), and only two of his comments were explicitly sexual – "nice ass" and "Does it take

all three of you to pump her breasts?  Can I come and watch?"[3]  Therefore, this case is even

more deserving of summary judgment than *Baskerville*.

Indeed, the Seventh Circuit's description of the alleged harasser in *Baskerville* could just

as easily have been penned with Behm in mind:

> Mr. Hall, whatever his qualities as a sales manager, is not a man of refinement;
> but neither is he a sexual harasser.  He never touched the plaintiff.  He did not
> invite her, explicitly or by implication, to have sex with him, or to go out on a
> date with him.  He made no threats.  He did not expose himself, or show her dirty
> pictures.  He never said anything to her that could not be repeated on primetime

---

[3]Behm's comments about (1) adding chocolate syrup to breast milk; and (2) the "female," "hormonal"
behavior of the elevators, while awkward and perhaps offensive, were not explicitly sexual – as opposed to, say,
importuning a subordinate to "run around naked" as in *Baskerville*.  And even if his request to Starnes to "hold my
hand" was intended as some sort of sexual proposition, it was a remarkably tame one.

> television. . . .  Some of his repartee . . . has the sexual charge of an Abbott and
> Costello movie. . . .  It is no doubt distasteful to a sensitive woman to have such a
> silly man as one's boss, but only a woman of Victorian delicacy – a woman
> mysteriously aloof from contemporary American popular culture in all its sex-
> saturated vulgarity – would find Hall's patter substantially . . . distressing.

*Id.*  Just so in the present case.  While Starnes may have found Behm's behavior bothersome, a

reasonable person in her situation would not find it "hostile and abusive," and thus her claim of

sexual harassment cannot proceed.  *Faragher*, 524 U.S. at 787.

A slew of other Seventh Circuit cases support this result, *e.g., McPherson*, 379 F.3d at

438-39; *Rogers*, 320 F.3d at 752-53; *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 462-64 (7th

Cir. 2002); *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002); *Adusumilli v. City*

*of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998); *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134,

1143-46 (7th Cir. 1997), but there is no need to belabor the point.  No reasonable jury could find

Starnes's work environment objectively hostile, and thus Barrett is entitled to summary

judgment on this claim.

### B. Constructive Discharge

Starnes's complaint, if given a generous interpretation, also alleges that she was

constructively discharged as a result of Behm's alleged harassment.  (*See* Compl. ¶ 5 ("The

consequence of Defendant's ongoing pattern of sexual harassment was Plaintiff's involuntary

resignation on or about February 14, 2003."))  However, this claim fails for the same reason as

her sexual harassment claim: the conduct of which she complains was insufficiently severe.

The Supreme Court recently held that "Title VII encompasses employer liability for a

constructive discharge," particularly "constructive discharge resulting from sexual harassment."

6

*Pennsylvania State Police v. Suders*, 124 S.Ct. 2342, 2352 (2004).[4]  But the standard for such a

claim is even higher than the usual run-of-the-mill sexual harassment claim:

> For an atmosphere of sexual harassment or hostility to be actionable, we reiterate,
> the offending behavior must be sufficiently severe or pervasive to alter the
> conditions of the victim's employment and create an abusive working
> environment.  A hostile-environment constructive discharge claim entails
> something more: A plaintiff who advances such a compound claim must show
> working conditions so intolerable that a reasonable person would have felt
> compelled to resign.

*Id.* (internal citations and quote marks omitted).  As detailed *supra*, Starnes's allegations do not

even make out a claim of sexual harassment, let alone the type of intolerable working conditions

*Suders* declared necessary for a constructive discharge claim.  Barrett is therefore entitled to

summary judgment on this claim as well.  *E.g., Rabinovitz v. Pena*, 89 F.3d 482, 489-90 (7th Cir.

1996).

### V. CONCLUSION

"The concept of sexual harassment is designed to protect working women from the kind

of male attentions that can make the workplace hellish for women. . . . It is not designed to purge

the workplace of vulgarity."  *Baskerville*, 50 F.3d at 430.  As explained above, Starnes's

workplace did not come close to being "hellish."  Thus, Barrett's motion for summary judgment

(Docket # 14) is GRANTED.  The Clerk is ORDERED to enter judgment in favor of

---

[4]The Court's holding applied only to cases of supervisor harassment; it expressed no opinion on cases of coworker harassment, such as this one.  124 S.Ct. at 2352 n.6.  But since Starnes's claim fails for another, clearly established reason, this Court simply assumes *arguendo* that the *Suders* holding would also apply here.

the defendant and against the plaintiff.[5]

Enter for this 5th day of May, 2005.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[5]Starnes took the unorthodox step of styling her response brief to Barrett's motion as a "Motion to Deny Summary Judgment." (Docket # 19.)  Obviously, that "motion" is DENIED.

8